UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DIAMONIQUA GRANT,

                              Plaintiff,          12-CV-962(MAT)

            v.                                    **DECISION**
                                                  **and ORDER**
CAROLYN W. COLVIN, Commissioner
of Social Security,[1]

                              Defendant.
_____

## <u>INTRODUCTION</u>

Diamoniqua Grant ("Plaintiff"), who is represented by counsel, brings this action pursuant to the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security ("the Commissioner") denying her application for Supplemental Security Income ("SSI") when she was a minor child. This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Dkt. ##11, 16.

## <u>BACKGROUND</u>

Quormina Taylor ("Taylor") protectively filed an SSI application on behalf of her minor daughter on June 5, 2009, alleging disability beginning on April 7, 2008. T. 120-22. Her application was initially denied, and a hearing was requested

_____

[1] Carolyn M. Colvin is automatically substituted for the previously named Defendant Michael Astrue pursuant to Fed.R.Civ.P. 25(d). The Clerk of the Court is requested to amend the caption accordingly.

before an Administrative Law Judge. T. 70, 73-80. Plaintiff, her attorney, and Taylor appeared before ALJ Michael Devlin on August 24, 2010, in Rochester, New York. T. 49-69. An unfavorable decision was issued on October 22, 2010, in which the ALJ found: (1) Plaintiff did not engage in substantial gainful activity since her application was filed; (2) she had the severe impairment of bipolar disorder; and (3) her impairment did not meet or equal the Listings set forth at 20 C.F.R. 404, Subpart P, Appx. 1. The ALJ then evaluated Plaintiff's limitations in the six domains of functioning, found that her impairment was not functionally equivalent to any listed impairment, and concluded that Plaintiff had not been disabled since the date of her application. T. 28-46.

The ALJ's determination became the final decision of the Commissioner when the Appeals Council denied her request for review on August 14, 2012. T. 1-6. This action followed. Dkt.#1.

The Commissioner moves for judgment on the pleadings arguing that the ALJ's decision must be affirmed because it was supported by substantial evidence and was based on the application of correct legal standards. Comm'r Mem. (Dkt.#11-1) 8-12.

Plaintiff has filed a cross-motion on the grounds that: (1) the ALJ improperly found Plaintiff and Taylor not credible, did not fully develop the record, and failed to find marked impairments in three of the six domains of functioning. Pl. Mem. (Dkt.#16-1) 7-13.

2

**DISCUSSION**

I.   **General Legal Principles**

  **A. Standard of Review**

  A determination by the Commissioner that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence" or when the decision is based upon legal error. See 42 U.S.C. § 405(g). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force," a reviewing court may not substitute its judgment for that of the Commissioner." Veino v. Barnhart, 312 F.3d 578, 586 (2d Cir. 2002). However, this deferential standard is not applied to the Commissioner's application of the law. Townley v. Heckler, 748 F.2d 109, 112 (2d Cir. 1984). "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have [his] disability determination made according to the correct legal principles." Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987).

  **B. Legal Standard for Disability Claims by Children**

  To qualify as disabled under the Act, a child under the age of eighteen must have "a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which

3

has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(I). By regulation, the Commissioner has promulgated a three-step analysis to determine whether a child is eligible for SSI benefits on the basis of a disability. Encarnacion ex rel. George v. Astrue, 586 F.3d 72, 75 (2d Cir. 2009) (citing 20 C.F.R. § 416.924, et seq.).

First, the ALJ determines whether the child is engaged in "substantial gainful activity." 20 C.F.R. §§ 416.924(a), (b). Second, the ALJ considers whether the child has a "medically determinable impairment that is severe," in that it causes "more than minimal functional limitations." Id., § 416.924(c). If a severe impairment is present, the ALJ must then consider whether the impairment "meets, medically equals," or "functionally equals" a presumptively disabling condition listed in the regulatory "Listing of Impairments." Id., § 416.924(d); 20 C.F.R. Part 404, Subpart P, Appx. 1.

The limitations caused by a child's severe impairment or combination of impairments are evaluated in the context of the following six domains of functioning: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) the child's health and physical well-being. 20 C.F.R. § 416.926a(b)(1). "For a child's impairment to functionally equal a listed impairment, the

4

impairment must 'result in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain.'" Encarnacion, 568 F.3d at 75 (quoting 20 C.F.R. § 416.926a(a)). An "extreme limitation" is an impairment which "interferes very seriously with [the claimant's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(i). A "marked limitation" is an impairment that "interferes seriously with [the claimant's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). "A marked limitation may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with the ability to function (based upon age-appropriate expectations) independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. Part 404, Subpart P, Appx. 1, § 112.00(C).

## II.  **Medical Evidence**

Plaintiff underwent an evaluation at Penfield Central School District on November 17, 2008, during which she appeared cooperative and pleasant. T. 190-96. She experienced moments of not being focused but brought herself back to task. T. 193. Testing revealed a verbal composite IQ of 81, a nonverbal composite of 89, and an IQ composite of 83, placing Plaintiff in the low average range. Id. Her broad reading score was low average, broad written score was average, and broad math score was borderline. T. 194.

Dr. Christine Ransom consultatively evaluated Plaintiff on July 7, 2009. T. 315-19. Plaintiff, an adolescent who resided with her mother, attended special education classes and received counseling at school. T. 315. She lived with her mother and brother, and her sister was diagnosed with bipolar disorder, Attention Deficit Hyperactivity Disorder ("ADHD"), and learning disability. T. 311-12. She had no psychiatric history and took no medication. T. 311.

Plaintiff attended the consultation dressed neatly, casually, and appropriately, with adequate hygiene and grooming, and normal posture and motor behavior. Eye contact was appropriate, with speech and language skills in the low average range. T. 316. Dr. Ransom noted that Plaintiff was uncooperative, irritable, and pressured, and appeared to be "faking bad on purpose." Id. She readily recalled, understood, and responded to instructions, and her attention and concentration were adequate. Id. Dr. Ransom concluded that the results were not a valid and reliable estimate of current functioning due to purposeful faking. Despite a full scale IQ of 65 (mildly mentally retarded), the physician opined that her intellectual capacity appeared to be in the high borderline range between 75 and 80, based on other factors during the evaluation. Id.

Plaintiff was diagnosed with bipolar disorder, currently moderate to marked, probable high borderline intellectual

6

functioning, and treatment was recommended for bipolar disorder. Prognosis was fair to good with appropriate treatment. T. 318. Dr. Ransom opined that Plaintiff would have moderate difficulty attending to, following, and understanding age-appropriate directions, completing age-appropriate tasks, adequately maintaining appropriate social behavior, responding appropriately to changes in the environment, learning in accordance with cognitive functioning, asking questions and requesting assistance in an age-appropriate manner, being aware of danger and taking needed precautions, and interacting adequately with peers and adults. T. 317-18.

Plaintiff obtained routine medical care at Penfield Family Medicine from June, 2009, through May, 2010. T. 382-96. Treatment notes indicate that Plaintiff had no psychiatric or social issues on March 22, 2010. T. 385. On May 27, 2010, her neurological examination was unremarkable except for some dizziness and feeling off-balance due to being hit in the head while playing basketball. T. 382. A psychological examination the same day indicated trouble concentrating, however she had been tested negative for ADHD. Id. During the same visit, the attending physician noted that Plaintiff's "mother [was] prompting her by whispering for answers to my questions." T. 383. Plaintiff was diagnosed with a prior concussion with no loss of consciousness, with differential

diagnoses of conversion disorder, anxiety, depression, or malingering. Id.

State Agency review psychologist E. Kamin reviewed the record on September 10, 2009, and opined that Plaintiff had less than marked limitations in acquiring and using information and attending and completing tasks, and no limitations in the remaining functional domains. T. 357-62. Diagnoses were borderline intellectual functioning, rule out bipolar disorder. T. 357.

## III. Testimonial Evidence and School Records

Plaintiff was born in June, 1993, and attended special education classes. T. 212-19, 220-28. At the time of her hearing, she was entering the 11th grade. T. 68, 120. A 2007-2008 report card showed grades of mostly As and Bs, with a D+ for not completing a major assignment. T. 209. A report card from the following school year indicated a cumulative grade point average of 75. T. 379. While two teachers noted that Plaintiff was a "pleasure to have in class," four teachers noted that Plaintiff had excessive absences and did not turn in assignments. T. 379. Individualized Education Program ("IEP") documents from April, 2010, showed that Plaintiff was progressing satisfactorily in most of her annual goals. T. 374-78.

During the disability hearing, Plaintiff testified that she tried her best at school but did not enjoy it, and that she felt overwhelmed at school by the number of people. T. 61-62. She got

along "okay" with her teachers, but told the ALJ that she got into fights with other students. T. 62-63. Plaintiff required extra time for her examinations because she was easily distracted. T. 63-64.

Taylor also testified at the hearing, stating that Plaintiff sometimes displayed an attitude and became upset for no reason. T. 53. Plaintiff didn't like to be around a lot of people, was easily distracted, and would get into physical fights with her siblings. T. 53-55. She took no medication, and spent most of the time watching television in her room during the summer months. T. 55.

## IV. <u>The decision of the Commissioner that Plaintiff was not disabled was supported by substantial evidence.</u>

### A. Credibility

Plaintiff first challenges the ALJ's credibility assessment of her and her mother. Pl. Mem. 7-8.

Social Security Ruling ("SSR") 96-7p requires ALJs to articulate the reasons behind credibility evaluations:

> The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

SSR 96-7p, 1996 WL 374186, at *4 (S.S.A. July 2, 1996). "If the child claimant is unable adequately to describe his symptoms, the ALJ must accept the description provided by testimony of the person

most familiar with the child's condition, such as a parent[,]" <u>F.S.</u>
<u>v. Astrue</u>, No. 10-CV-444, 2012 WL 514944, at *19 (N.D.N.Y. Feb.15,
2012) (citing <u>Jefferson v. Barnhart</u>, 64 Fed. Appx. 136, 140 (10th
Cir. 2003)), and "make specific findings concerning the credibility
of the parent's testimony...." <u>Id.</u> (citing <u>Jefferson</u>, 64 F. App'x
at 140 (citation omitted)).

In his opinion, the ALJ determined that the degree of
limitation alleged was not credible based on evidence that "appears
to indicate that the claimant's mother is attempting to influence
the process and make the claimant appear to be disabled." T. 36.
The ALJ noted Plaintiff's psychological evaluation conducted by
Dr. Ransom, who found that Plaintiff was uncooperative,
intentionally performing poorly, and was "faking bad." <u>Id.</u>,
T. 311-18. Plaintiff's treating physician also opined that Taylor
was coaching or prompting Plaintiff during an evaluation, and
suggested a differential diagnosis of malingering in the treatment
notes. T. 36; T. 383. Finally, the ALJ noted that Plaintiff was
working after school as a food server, which "demonstrat[ed]
adaptive functioning," further undermining Plaintiff's allegation
of a disabling impairment. T. 36.

In accordance with the regulations, the ALJ made a specific
credibility finding as to Plaintiff's testimony concerning her
limitations, and it was based on substantial evidence in the
record.

**B.    Development of the Record**

Next, Plaintiff argues that the ALJ failed to properly develop the record with respect to her education because Plaintiff's IEP from the 2009-2010 school year was not considered. Pl. Mem. 9-10.

To determine whether the ALJ's findings are supported by substantial evidence, the Court must consider whether "the claimant has had a full hearing under the [Commissioner's] regulations and in accordance with the beneficent purposes of the Act." Cruz v. Sullivan, 912 F.2d 8, 11 (2d Cir. 1990) (internal citations omitted). In addition, "[b]ecause a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative duty to develop the administrative record." Perez v. Chater, 77 F.3d 41, 47 (2d Cir. 1996). The ALJ's determination of disability is not based solely on testimony at the hearing. When determining whether or not a child is disabled, all relevant evidence on the record is considered, including medical evidence, school records, and information from persons who know the claimant and who can provide evidence about the claimant's functioning. 20 C.F.R. § 416.924.

At the time of Plaintiff's hearing, her most recent IEP in the record was one-year old. T. 212. However, the record also contained a Progress Report for IEP Goals, dated April 29, 2010, which consisted of six pages of assessment as part of Plaintiff's overall educational achievement to date, showing that Plaintiff was

generally progressing satisfactorily with regard to her academic
goals as provided by her IEP.  T. 373-78. Plaintiff's 2009-10
school year report card also indicated a cumulative grade point
average of 75. T. 379. Among other things, the report card showed
positive remarks by her teachers despite Plaintiff's excessive
absences impacting her overall scores. Id. The same was noted by
the ALJ in discussing her 2008-09 report card and her 2008-09 IEP.
T. 40. The administrative record with respect to Plaintiff's
education was therefore sufficient for the ALJ to determine that
Plaintiff was not disabled. There were no significant conflicts,
and the absence of the 2009-10 IEP does not render the record
inadequate because it is unlikely this sole document, even if
contradicted by the remainder of the record, would have
significantly affected the ALJ's decision. See, e.g., DeChirico v.
Callahan, 134 F.3d 1177, 1184 (2d Cir. 1998) (An ALJ's duty to
develop the record is triggered where there is "reason to believe
that the information was necessary to reach a decision."). Thus,
the Court finds that the ALJ did not commit legal error by not
requesting Plaintiff's most recent IEP. See Rodriguez ex rel. Mena
v. Astrue, No. 10 Civ. 0305, 2011 WL 2923861, at *9 (S.D.N.Y.
July 7, 2011) (finding that omitted pages from a teacher
questionnaire did not deprive plaintiff of a full record where
there were other reports that described child's skill levels for
academic tasks and social interactions in the same school year).

Moreover, Plaintiff received a full and fair hearing at which she and Taylor testified, responding to questions from both counsel and the ALJ. T. 53-67. The ALJ asked Plaintiff and her mother questions regarding Plaintiff's social and familial relationships, her academic experiences, and her emotional disposition. At the conclusion of these questions, the ALJ permitted Plaintiff's attorney to follow with a closing statement which elaborated upon Plaintiff's and Taylor's responses. T. 68.

For these reasons, the Court finds that the Commissioner properly developed the administrative record and provided Plaintiff a full and fair hearing.

## C.   Functional Domains

Plaintiff contends that the ALJ's decision was not based on substantial evidence when he found "less than marked" limitations in three domains of functioning: Acquiring and Using Information, Attending and Completing Tasks, and Interacting and Relating with Others. Pl. Mem. 10-12.

### 1.   Acquiring and Using Information

In his decision, the ALJ recounted record information suggesting that Plaintiff suffered from some limitations in the domain of acquiring and using information, including her placement in special education classes due to a learning disability. T. 38. The evidence cited, which included Plaintiff's 2008-09 IEP documents, intelligence evaluations, and school report cards,

13

indicated that her overall cognitive ability was in the low average range, with average verbal reasoning, low average visual-perceptual and working memory skill, and high average processing speed. Id. Moreover, Plaintiff's negative academic achievement was mostly attributed to her high level of absenteeism. Id. The fact that Plaintiff was classified as special education does not, standing alone, warrant a finding of a marked limitation. See Torres v. Comm'r, 09 CV 59, 2010 WL 2674543, at *7 (E.D.N.Y. June 30, 2010) (upholding Commissioner's finding that claimant, who received some special education instruction and had a low average IQ score that fell within two standard deviations of the mean, had less than marked limitations in acquiring and using information).

Here the evidence shows that Plaintiff's impairment in this area was not "marked," and Plaintiff's allegation that the ALJ did not substantiate his finding, see Pl. Mem. 10, is without merit.

## 2.  Attending and Completing Tasks

In finding a less than marked limitation in this area, the ALJ took into account Taylor's claim that Plaintiff had a limited attention span, as noted the IEPs indicating her difficulty with distractibility. T. 39. The remaining evidence showed, however, that Plaintiff's treating physician indicated that previous tests for ADHD were negative, and that Plaintiff had no history of mental health treatment. T. 39; 382, 385. She displayed adequate attention and concentration during her consultative examination, T. 316, and

a school evaluation demonstrated that while she had moments of not being focused, she "brought herself back to task." T. 193. Finally, the ALJ noted again that Plaintiff's report cards showed that her academic achievement was negatively impacted by excessive absences and arriving to class unprepared. T. 39.

While there is some evidence of her distractibility, which the ALJ properly considered, the balance of the record shows that the ALJ relied on substantial evidence when he found a less than marked limitation in this domain. See Watson ex rel. K.L.W. v. Astrue, No. 07-CV-6417, 2008 WL 3200240, *3 (W.D.N.Y. Aug. 5, 2008) (ALJ correctly found less than marked limitations in attending and completing tasks where the medical record did not support a marked impairment, and school evaluations showed that the claimant could be directed to a task, even though she required twice the time to complete assigned tasks, had difficulty focusing on her work, and was easily distracted).

The ALJ's finding in this domain is therefore supported by substantial evidence.

### 3.    Interacting and Relating with Others

The ALJ discussed Plaintiff's and Taylor's testimony that Plaintiff did not get along with her sister, did not have many friends, and engaged in one school fight for which she was suspended. T. 40. Despite this, Plaintiff had no history of outpatient mental health treatment or hospitalizations, her IEPs

showed that she related well to peers and adults and was courteous, polite, and respectful, and her 2008-09 report card indicated that she was a "pleasure to have in class." <u>Id.</u>, T. 379.  Similarly, Plaintiff's treating primary physician noted no social issues. T. 40; T. 385.

Accordingly, the ALJ appropriately assessed a less than marked limitation in this domain.

<b><u>CONCLUSION</u></b>

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt.#11) is granted, and Plaintiff's cross-motion (Dkt.#16) is denied. The Complaint is dismissed in its entirety with prejudice.

ALL OF THE ABOVE IS SO ORDERED.

S/Michael A. Telesca

_____
MICHAEL A. TELESCA
United States District Judge

Dated:    Rochester, New York
          June 15, 2015